**Carey Dunai LOHRENZ, Plaintiff,**

v.

**Elaine DONNELLY, et al., Defendants.**

No. Civ. 96–777 RCL.

United States District Court,
District of Columbia.

May 10, 1999.

Pamela N. Hultin, McCarthy, Lebit, Crystal & Haiman, L.P.A., Cleveland, OH, Susan Graham Barnes, Denver, CO, for plaintiff Carey Lohrenz.

Kent Masterson Brown, Frank M. Northam, Webster, Chamberlain & Bean, Washington, DC, for defendants Elaine Donnelly and Center for Military Readiness.

Allen V. Farber, James A. Barker, Jr., Green, Stewart, Farber & Anderson, P.C., Washington, DC, for defendant News World Communications, Inc. d/b/a/ The Washington Times.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on Defendant News World Communications, Inc.'s Motion [54] to Compel Discovery, Plaintiff's Motion [56] for Protective Order,

Plaintiff's Supplemental Motion [66] for Protective Order, Defendant News World Communications, Inc.'s Motion [65] for Leave to File Surreply to Plaintiff's Reply to Its Opposition to Motion for Protective Order, the Parties' Stipulation [N/D] for Entry of Protective Order on a Temporary Basis, Defendants Donnelly and Center for Military Readiness's Motion [80] to Compel Compliance with Subpoena Duces Tecum, Department of the Navy's Motion [83] for Privacy Act Order and Protective Order, Plaintiff's Motion [69] for Extension of Time to Respond to Defendant News World Communications, Inc.'s First Request for Admissions, and Plaintiff's Supplemental Motion [72] for Extension of Time to Respond to Defendant News World Communications, Inc.'s First Request for Admissions: Upon consideration of these motions and the stipulation, the applicable oppositions and replies, and the relevant law, the court will GRANT IN PART and DENY IN PART Defendant News World Communications, Inc.'s Motion [54] to Compel Discovery; DENY Plaintiff's Motion [56] for Protective Order; DENY Plaintiff's Supplemental Motion [66] for Protective Order; GRANT Defendant New World Communications, Inc.'s Motion [65] for Leave to File Surreply to Plaintiff's Reply to Its Opposition to Motion for Protective Order; DENY as moot the Parties' Stipulation [N/D] for Entry of Protective Order on a Temporary Basis; DENY Defendants Donnelly and Center for Military Readiness's Motion [80] to Compel Compliance with Subpoena Duces Tecum; GRANT Department of the Navy's Motion [83] for Privacy Act Order and Protective Order; and GRANT *nunc pro tunc* Plaintiff's Motion [69] for Extension of Time to Respond to Defendant News World Communications, Inc.'s First Request for Admissions and Plaintiff's Supplemental Motion [72] for Extension of Time to Respond to Defendant News World Communications, Inc.'s First Request for Admissions.

## I. *Introduction*

Plaintiff, Lieutenant Carey Dunai Lohrenz, was the first female pilot to be assigned directly from naval training to a naval combat aircraft. Several months after her assignment to Squadron 213, which was then assigned to the U.S.S. Abraham Lincoln in the Pacific Fleet, another female pilot in plaintiff's squadron was killed in a crash while attempting to land her airplane. Shortly thereafter, unflattering allegations began to spread publicly concerning plaintiff's abilities, training, and performance.

The gravamen of plaintiff's complaint is two-fold. First, she alleges that certain persons within the Department of the Navy, defendants John Doe 1–100, released records pertaining to plaintiff's training and performance as an aviator to defendant Elaine Donnelly, President of defendant Center for Military Readiness, a public policy organization concerned with military personnel issues. This release, according to plaintiff's complaint, was a violation of the Privacy Act, 5 U.S.C. § 552a *et seq.*[1] Second, plaintiff alleges that Donnelly and the other media defendants relied upon the illegally released information by publishing to Congressmen, naval officers, and members of the media defamatory correspondence and newspaper articles pertaining to plaintiff's job performance. Based upon these allegations, plaintiff seeks redress for violations of the Privacy Act and for libel, slander, and invasion of privacy.

The current disputes now before the court involve plaintiff's and non-party Department of the Navy's responses, objections, and motions for protective orders in response to defendants' interrogatories and document requests. Defendants complain that documents and information have been improperly withheld by plaintiff and non-party Department of the Navy and oppose the entry of any protective order. Plaintiff and non-party Department of the Navy both seek protective orders based on Privacy Act concerns as to defendants' document requests. Neither plaintiff nor the Department of the Navy, however, contest the relevance of the information sought in defendants' requests for production. Indeed, this information appears to be directly relevant to the essential

---

1. In non-party Department of the Navy's motion for protective order, it refers to this release of information as "unauthorized." Department of the Navy's Mot. for Protective Order at 8.

elements of the case as it bears upon issues such as plaintiff's potential status as a public figure, public involvement in the debate of women's role in combat, notoriety as a women's pioneer in naval aviation, and injuries.

## II. *Analysis*

■ "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1). Although plaintiff lodged several objections as to relevance in her discovery responses, she has abandoned this position in her memoranda. *See* Plaintiff's Mot. for Protective Order at 2. Thus, in opposition to defendants' motion to compel, it is plaintiff's burden to prove the applicability of her claims of privilege. Moreover, both plaintiff and the Department of the Navy seek a protective order under FED.R.CIV.P. 26(c). Under Rule 26(c), "for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.... The provisions of 37(a)(4) apply to the award of expenses incurred in relation to the motion." FED. R.CIV.P. 26(c). To the extent plaintiff and non-party Department of the Navy seek a protective order, they bear the burden of making the showing of good cause contemplated by the rule. *Rolscreen Co. v. Pella Products*, 145 F.R.D. 92, 95–96 (S.D.Iowa 1992); *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y.1984). The required showing of good cause under Rule 26(c) must be sufficient to overcome defendants' legitimate and important interest in trial preparation. *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985).

For the purposes of analysis, the court will first address the issues raised as to plaintiff's responses to defendants' interrogatories served upon only her. These issues generally concern whether plaintiff answered the inquiries fully and whether certain objections are valid. The court will then turn to the protective order issues pertaining to defendants' document requests served upon plaintiff and non-party Department of the Navy. Plaintiff and the Department of the Navy make the same arguments in opposition to defendants' motions to compel and in support of their own motions for protective orders.

### A. *Interrogatories*

#### 1. *Interrogatory Number 1*

This interrogatory asks plaintiff to "[i]dentify each person whom you expect to call as an expert witness at trial and, as to each person so [i]dentified, state the specific subject matter of his/her anticipated testimony, the precise facts as to which the expert is expected to testify, the opinions to be presented, and the basis for each such opinion." Pl's Resp. to First Set of Interrogatories. Plaintiff responded by stating that no rule required her to disclose this information at this juncture and that no designation of experts has yet been made by plaintiff. Subject to this objection, however, plaintiff listed sixteen people who have an expertise in certain named areas that may be called to testify as experts, and plaintiff described their knowledge accordingly. Defendants contend that this response was "evasive at best" and that they believe plaintiff is trying "to lure [them] into deposing fact witnesses for [plaintiff] so that she may then endeavor to convert them into expert witnesses." Def's Mot. to Compel at 16.

Defendants' request to compel an immediate answer with greater specificity on this point will be denied. Rules 26(a)(2) and 26(b)(4) of the Federal Rules of Civil Procedure clearly govern the disclosure of expert witness information. In accordance with Rule 26(a)(2), plaintiff has disclosed those people "who may be used at trial" to present expert testimony. The court has no reason to believe that plaintiff is or is not "luring" defendants into deposing any or all of these people. If plaintiff intends to call certain witnesses, however, she will need to comply with the other federal rules governing the disclosure of expert testimony, *see* FED. R.CIV.P. 26(a)(2)(C), and defendants will be

entitled to that information as provided under the rules. Until that time, however, in the absence of any agreement of the parties to the contrary, defendants' request must be denied. At any rate, defendants I request is effectively moot in light of the court's amended scheduling order, issued by separate order this date.

### 2. *Interrogatory Number 6*

This interrogatory asked plaintiff to "[d]escribe specifically and in detail all 'scorn[,] hatred, and ridicule by the public in general and the naval aviation community in particular' which [she] claim[s] to have suffered as a result of that which [she] allege[s] was wrongful conduct by Defendants." Pl's Resp. to First Set of Interrogatories. This interrogatory goes on to request the date and time of such instances, the identity of persons with relevant knowledge, and any mitigatory steps taken as to each instance of the pertinent conduct. In response, plaintiff provided several instances of incidents that she claims are tantamount to being subjected to scorn, ridicule, and hate by the public and naval officials. She does not, however, provide further details such as dates and times. As a justification for these types of omissions, plaintiff contends that "[d]efense counsel's obsession with 'details' is inconsistent with the general purpose of interrogatories, which is to learn 'information of major moment,'" citing *Onofrio v. American Beauty Macaroni*, 11 F.R.D. 181, 184 (W.D.Mo. 1951).

The court rejects plaintiff's objection. "As a general rule a party in answering interrogatories must furnish information that is in its possession and can be given without undue labor and expense." Charles Alan Wright, Federal Courts § 86, at 622. On the other hand, it is true in a certain sense that interrogatories cannot be used to force a party to prepare its opponent's case. *See id.* This is the principle on which the *Onofrio* court relied, as cited by plaintiff.[2] But this principle does not come into play in the context of the interrogatory submitted by defendants, especially in the context of this case. First, the information sought by defendants is central to any damages that may have been sustained by plaintiff, and defendants are certainly entitled to know with specificity, to the extent it is reasonably known or can be learned by plaintiff, the details of these allegations. Second, plaintiff has not made an adequate showing to convince this court to exercise its discretion to disallow more specific information from being disclosed on this interrogatory. "[I]t must be shown that the research is unduly burdensome and oppressive." *Id.* at 623. Plaintiff has made no such showing here, instead merely alleging that these answers do not go to issues of "major moment," which is plainly incorrect. For these reasons, the court will overrule plaintiff's objection and compel plaintiff to fully answer the interrogatory propounded by defendants, in accordance with plaintiff's duties under the federal rules of civil procedure. *See* Fed.R.Civ.P. 33(b)(1).

### 3. *Interrogatory Numbers 8, 9, & 10*

These interrogatories ask plaintiff to "[d]escribe specifically and in detail all damages, harm, and injury which [she] claim[s] to have suffered or that [she] claim[s she] will suffer as a result of that which [she] allege[s] to have been any wrongful act or omission by each defendant." Pl's Resp. to First Set of Interrogatories. Plaintiff objected to all of these questions because they require her, "a lay person, to draw legal conclusions and seek[ ] an impossibility—to require the Plaintiff to apportion injuries and damages among multiple tortfeasors under circumstances in which the injuries and damages are not subject to apportionment." *Id.* Subject to these objections, plaintiff provided an account of how she feels that she has been damaged by defendants' conduct. Specifically, plaintiff asserted that she was devastated emotionally, lost confidence, was maligned, lost her chance to fly carrier-based combat aircraft, has no chance for promotion in the Navy, had her reputation soiled, lost income, and has no

---

**2.** *Onofrio* is distinguishable from this case, however. It involved a defendant asking the plaintiff to provide detailed research on documents that were within the defendants' own possession. This is certainly not the case here, as only plaintiff has knowledge of the relevant facts of the scorn and hatred she was allegedly subjected to as a result of defendants' actions.

chance of being hired by a major airline carrier. Defendants claim that plaintiff has simply provided a summary of argument without the requisite level of detail, such as "what harm was suffered, when it was suffered, and as a result of which Defendant's alleged conduct." Pl's Motion to Compel at 18. Plaintiff responds that plaintiff has done "the best she can" and that these questions are objectionable as contention interrogatories anyway.

First, the court rejects plaintiff's untimely "contention interrogatory" objection. As FED.R.CIV.P. 33(b)(4) provides, "[a]ll grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown." Plaintiff asserted this objection for the first time in her opposition to plaintiff's motion to compel, well beyond the thirty-day window provided under the rules. *See* FED.R.CIV.P. 33(b)(3). Therefore, plaintiff's "contention interrogatory" objection has been waived. Plaintiff should have properly stated this objection at the time she originally responded to these interrogatories and attempted to invoke the protection of FED.R.CIV.P. 33(c), which pertains to plaintiff's belated objection. The court also rejects plaintiff's claim that the factual information as to how she was harmed by defendants' conduct requires her to draw "legal conclusions," except to the extent that it would require her to apportion her damages among the various defendants.

The question then becomes whether plaintiff answered the largely unobjectionable portions of these questions "fully," as required by FED.R.CIV.P. 33(b)(1). Plaintiff clearly states that she has answered these questions to the best of her ability. She was never asked to describe when each of these individual harms was sustained, as defendants would have it seem. Therefore, the court will deny defendants' motion to compel further disclosures under this interrogatory. The court notes, however, that plaintiff must supplement her answers to this interrogatory under the applicable provisions of the federal rules of civil procedure, should more information become available.

#### 4. *Interrogatory Number 14*

This interrogatory asked plaintiff to "[i]dentify each person that [she] know[s] or understand[s] has read" in a report published by defendants Donnelly and Center for Military Readiness or in articles published by *The Washington Times* or *San Diego Union–Tribune* the defamatory statements allegedly made by defendants. Plaintiff responded by extensively listing naval personnel that she "assumes" read the pertinent articles or the report and stating that she cannot distinguish which source any of the listed people might have read. She goes on to state that many of those individuals read the republication of the articles in the *Early Bird*, which she claims is the only real-time source for news on the U.S.S. Abraham Lincoln. She also adds that thousands of other people have probably read these articles in the various newspapers published by defendants. Contrary to the question asked, however, plaintiff does not provide any further detail as to when any given person read one of the defamatory statements, which article was read, how plaintiff learned of that particular reading, or how the reader appeared to react to the article. Plaintiff seeks to compel answers to these latter types of details.

The court must grant defendants' request to compel an answer with greater specificity to this question. It is true that plaintiff does not fully answer defendants' question. She must provide these answers under FED. R.CIV.P. 33(b)(1) because these inquiries are not objectionable. The court cannot ascertain what plaintiff's response to defendants' argument is because the first sentence of her responsive argument ends in mid-sentence and never resumes. Because plaintiff is otherwise required to fully answer these questions, defendants' motion will be granted as to this interrogatory. Plaintiff's objections as to overbreadth and compound questioning are overruled. The question and its subparts are reasonably tailored to seek discoverable information and all go to a single discrete issue.

#### 5. *Interrogatory Number 15*

This interrogatory asks plaintiff to "[d]escribe specifically and in detail what [she]

contend[s her] reputation was at any time during the period from January 1, 1990 to and including the date of response. State all facts which [she] contend[s] support [her] response and identify all persons whom [she] believe[s] will verify that [her] reputation was as stated.... Identify all persons whom [she] ha[s] reasons to believe have or had a different or contrary view of [her] reputation during that period." Pl's Resp. to First Set of Interrogatories. In addition to objecting to overbreadth and compound questioning, plaintiff goes through each phase of her aviation history with the Navy, states what she believes her reputation was during each of these periods, and provides the names of people to substantiate those positions. She does not provide anyone that might have a view to the contrary but, at the same time, does not explicitly state that she knows of no such person. Defendants seek further information as to the identity of people with contrary views of plaintiff's reputation from that of her own or, at least, a statement that she knows of no such people.

The court will grant defendants' motion to compel this information. It is not at all clear from plaintiff's responses that she has answered this question fully, as required by FED.R.CIV.P. 33(b)(1). She does not provide a single person who may have a contrary view of her reputation, but she does not disclaim this knowledge either. Moreover, she never even acknowledges or addresses defendants' argument on this point, merely stating that "she has nothing more to add at this time." Pl's Opp. at 20. In light of these circumstances, plaintiff must either state that she has no such knowledge or give the identities of the pertinent people. The entire purpose of discovery is to reveal these types of potential witnesses. Plaintiff's objections as to overbreadth and compound questioning will be overruled. This question was reasonably tailored to lead to discoverable information and all of its subparts go to a single discrete topic.

### 6. *Interrogatory Number 16*

This interrogatory asked plaintiff to identify each person who changed or who she believes changed his or her view or opinion of plaintiff as a result of publication of the allegedly defamatory publications. Plaintiff responds in relevant part by giving three instances in which she was questioned or interviewed in a manner that, apparently, gave plaintiff the impression that the questioner's view of plaintiff's reputation had changed. Defendants contend that this listing, absent further detail called for by the question such as the extent and fashion in which the pertinent person's opinion of plaintiff changed, is inadequate. Plaintiff responds that she has made an "honest, complete statement." Pl's Opp. at 20.

The court will deny defendants' motion to compel a more complete answer on this point. Defendant states that she has answered this question completely, and she therefore has no further duty to discharge under the federal rules of procedure. Of course, plaintiff will not be allowed to simply supplement her answers later if she knew or reasonably could have learned this information at the time it was originally requested. Because plaintiff has answered to the best of her ability, however, defendants' motion to compel further information on this interrogatory will be denied.

### B. *Document Requests*

In her responses to defendants' document requests, plaintiff litters the record with several spurious objections of relevance, attorney-client privilege, attorney work-product doctrine, and an especially novel privilege entitled the "reporter-source confidentiality" privilege for non-reporters. These baseless objections must be rejected. First, the court has already explained that plaintiff's objections as to relevance have been abandoned once these matters were briefed and, at any rate, such objections are meritless. Second, plaintiff has waived any objections as to attorney-client privilege or attorney work-product doctrine. FED.R.CIV.P. 26(b)(5) states that "[w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly *and shall describe the nature of the documents ... not produced or disclosed in*

*a manner that ... will enable other parties to assess the applicability of the privilege or protection.*" FED.R.CIV.P. 26(b)(5) (emphasis added). Despite admitting that she has withheld "a few work product privileged documents to [*sic*] which a privilege log will be provided," plaintiff still has not produced such a privilege log to the court (or, to the court's knowledge, to defendants). Plaintiff has not provided this specified information in any other form. A bald assertion of these privileges clearly cannot suffice under the federal rules. *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 541–42 (10th Cir. 1984). Therefore, to the extent that plaintiff is withholding any responsive documents under assertions of attorney-client or work-product privilege, these documents must be produced. Third, plaintiff does not even attempt to defend her claims of "reporter-source confidentiality" privilege, despite being repeatedly attacked on this very point by defendant News World Communication. The court is not aware of any privilege that allows a party, especially a non-reporter, to cloak documents or knowledge simply by providing this information to a member of the media. Even if such a privilege existed, plaintiff has not made any attempt to meet the burden of proving such a privilege. Therefore, any documents or information being withheld under this privilege must be produced.

Plaintiff also makes certain references in her discovery responses that give the court some pause. For example, as seen in the following passage, plaintiff indicates that she believes she can dictate the timing of when certain information can be produced:

> The Plaintiff's claims against the Defendants include the allegation that the Defendants defamed the Plaintiff and invaded her privacy based on conclusions they drew from a purloined *incomplete* set of the plaintiff's [F–14] records. In order to establish the factual basis for their defamatory allegations against the Plaintiff it will be necessary for the Plaintiff to have an opportunity to establish through discovery exactly what records the defendants had in their possession at the time they made their defamatory statements and to take the deposition testimony [of several indi-

viduals] concerning their conclusions based on those records without their having access to the Plaintiff's complete [F–14] records. Plaintiff's counsel are drafting an appropriate protective order for consideration by defense counsel.

Plaintiff's Responses to Defendant News World Communications' First Request for Production of Documents at 3. Consistent with plaintiff's performance as to the submission of the privilege log, however, plaintiff never included this argument in her motion for protective order or any such provision in her proposed protective order. Nonetheless, this contention is plainly incorrect. Plaintiff is not allowed to re-write the rules of civil procedure to fit whatever sequence of discovery that she may choose, in the absence of a protective order. FED.R.CIV.P. 26(d) explicitly rejects the proposition that, even if good cause could be shown—which is not the case—a party is free to produce responsive information when it unilaterally chooses:

> Timing and Sequence of Discovery.... Unless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discovery.

FED.R.CIV.P. 26(d). Therefore, the court rejects plaintiff's theory in this regard.

The court's concern does not end with this frivolous argument, however. Plaintiff repeatedly cites the proposition that she will supplement discovery as information becomes available. Although this is certainly a requirement under the federal rules, *see* FED.R.CIV.P. 26(e), it cannot be used to push off the production of information properly requested and reasonably available; it was intended to apply only to information "thereafter acquired." *See id.* If plaintiff believes that she can simply put off until tomorrow what the rules of civil procedure (and this court) require her to do today, the court will take this opportunity to relieve her of this misunderstanding. Again, the court should not have to tell plaintiff that she cannot

simply choose to produce information when she feels like it.

After peeling back all of the undefended and undefendable objections and references discussed above, plaintiff's primary objection—and non-party Department of the Navy's sole objection—can now be analyzed. Specifically, both contend that certain categories of relevant information—such as plaintiff's pilot training records and related performance records, Navy records and reports containing Privacy Act information,[3] and Navy records and reports that may implicate the privacy rights of third parties—should be produced only under protective order and should not be disseminated to anyone other than defendants during the pretrial phase of this litigation. Non-party Department of the Navy's request for a protective order will be granted, but plaintiff's similar request will be denied.

 In this circuit the starting point for an analysis of document production in the context of a party seeking a Privacy Act protective order is *Laxalt v. McClatchy*, 809 F.2d 885 (D.C.Cir.1987). In *Laxalt*, the court of appeals held that the "Privacy Act ... does not create a qualified discovery privilege as that concept is generally understood.... Rather, the plain language of the statute permits disclosure 'pursuant to the order of a court of competent jurisdiction.'" *Id.* at 888 (quoting 5 U.S.C. § 552a(b)(11) (1982)). Thus, the court's determination of the propriety of plaintiff's requested relief does not turn on a privilege analysis. Instead, "the standards set forth in the [Federal Rules of Civil Procedure] must be followed with respect to discovery requests in District Court." *Id.* at 889. In other words, in the context of this dispute, plaintiff and the Department of the Navy must make an adequate showing of "good cause" for the entry of a protective order.

 In *Laxalt*, the court of appeals went on to discuss the corresponding duties of a district court when considering discovery in the Privacy Act context, noting that a district court's "supervisory responsibilities may in many cases be weightier than in the usual

discovery context." *Id.* In short, the court must "accord proper weight to the policies underlying ... statutory protections, and ... compare them with the factors supporting discovery in a particular lawsuit." *Id.* (quoting *Freeman v. Seligson*, 405 F.2d 1326, 1344 (D.C.Cir.1968)). This analysis includes a balancing of "the need for disclosure against potential harm to the subject of the disclosure." *Id.* at 888, 890 (quoting *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1447 (11th Cir.1984)), presumably to the extent such a determination would shed light upon good cause for an order protecting a party from "annoyance, embarrassment, oppression, or undue burden or expense." FED. R.CIV.P. 26(c). Upon consideration of the interest of defendants in disseminating statutorily protected Privacy Act information of plaintiff and of unnamed third persons to the public versus the potential harm involved with such releases to plaintiff's and other third persons' privacy rights, the court finds that the requisite showing of good cause has been made by non-party Department of the Navy and a protective order will therefore be entered as to it.

Plaintiff and, potentially, third persons not parties to this lawsuit have privacy interests in not having their statutorily protected information released into the public domain during the pretrial discovery process in this case. While not absolute, these interests are embodied in and protected by the Privacy Act, 5 U.S.C. § 552a. The Supreme Court has recognized that "[a]lthough [FED.R.CIV.P. 26(c)] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the [r]ule." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n. 21, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). Indeed, the Court found that "[t]he prevention of the abuse that can attend the coerced production of information under [a state analog to FED.R.CIV.P. 26(b)(1) ] is sufficient justification for the authorization of protective orders." *Id.* at 35–36, 104 S.Ct. 2199. This preventative measure is linked to the "opportunity ... for litigants to obtain—incidentally or purposefully—information that

---

**3.** Plaintiff apparently includes in this category her Naval medical and financial records.

not only is irrelevant but if publicly released could be damaging to reputation and privacy." *Id.* at 35, 104 S.Ct. 2199.

In terms of a balancing of interests, defendants have shown no legitimate reason for the court not to restrict the dissemination of this otherwise statutorily protected Privacy Act information to defendants' counsel. Defendants waste most of their time addressing the point of why they, as parties to this litigation, are entitled to this information. Of course, neither plaintiff nor the Department of the Navy disagrees. Defendants' interest in this material and its relevance is apparent and conceded; it is *further* dissemination, outside of the reasonable requirements of defending this lawsuit, of which plaintiff and the Department of the Navy complain. Therefore, the point in dispute is whether the defendants' interest in disseminating this information beyond the legitimate purposes of this lawsuit outweighs plaintiff's and any potential third parties' interests in having their statutorily protected Privacy Act information remain undisclosed to the public. Defendants never address this point squarely, and the court is convinced that they can demonstrate no such interest in this case.[4] Even if some slight interest in the dissemination of statutorily protected Privacy Act information for non-litigation purposes could be gleaned, it would pale in comparison to plaintiff's and other potential third parties' interests in having their Privacy Act records and information protected.[5] Therefore, insofar as plaintiff's records are protected by the Privacy Act, the entry of a protective order disallowing the dissemination of this information beyond defendants for non-litigation purposes during the pretrial phase of this lawsuit, to the extent the information is received through the discovery process. Non-party Department of the Navy has met its burden of showing good cause for the entry of such an order—the potential for the abuse of privacy rights, including the unnecessary and unconsented to release of this statutorily protected information to the public, especially in light of a total absence of any legitimate interest on behalf of the defendants in the dissemination of this information for non-litigation purposes. Accordingly, the production of this information from the Department of the Navy shall be governed by the terms of the Department of the Navy's proposed protective order, as signed and entered by the court by separate order this date.[6]

4. In responding to plaintiff's arguments, defendants emphasize that because plaintiff has relied upon conclusory allegations to support good cause her motion must be denied. This contention has been overruled, however, by well settled case law. *See National Children's Ctr., Inc.,* 98 F.3d at 1411 ("[*In re Halkin,* 598 F.2d 176 (D.C.Cir.1979),] was overruled by the Supreme Court in *Seattle Times* where the Court considered and rejected the argument that protective orders must be supported by factual showings."). In responding to non-party Department of the Navy's arguments, defendants assert that timely objections were never filed as required under Fed.R.Civ P. 45. The record is clearly to the contrary, however, because the Department of the Navy properly objected by letter in a timely fashion. Thus, the arguments presented by defendants have no merit.

5. Of course, as plaintiff and the Department of the Navy concede, this protective order must be limited to the pretrial phase of this case; a totally different balancing would arise at the time of trial. *Seattle Times Co.,* 467 U.S. at 34, 104 S.Ct. 2199. Moreover, the protective order cannot protect information gained by defendants from sources independent of the court's discovery process.

6. The protective order proposed by non-party Department of the Navy and signed by the court does not provide for the automatic release of any Privacy Act information to the parties themselves, as opposed to their counsel, absent a subsequent order of the court. A good cause basis, after the proper balancing of interests, exists for this provision as well. The Department of the Navy appears to admit that plaintiff's Privacy Act information has already been released without authorization. *See supra* note 1. Defendants themselves have the power to disseminate this and further protected information quickly into the public domain. If plaintiff's allegations are taken as true, defendants have already used this sort of information to defame plaintiff in this manner. Thus, there is a strong interest in limiting the dissemination of this information to counsel and their employees, as provided under the protective order. The court recognizes that counsel may, however, need the help of their clients for many reasons and that this help may require the clients to have knowledge of the Privacy Act information. Defendants may move for a court order allowing such dissemination if and when this becomes necessary. Until then, however, a protective order is warranted.

In contrast, plaintiff's motions for protective order will be denied, as her interests implicate a different balancing under *Laxalt.* To the extent that plaintiff is in possession or custody of records that would be classified as Privacy Act records if they were in the government's possession, plaintiff has not shown good cause for a protective order. Because this is the exact point for which plaintiff seeks a protective order, her motions must be denied.

■ In general terms, the Privacy Act prohibits a government agency from disclosing without the subject's consent any item, collection, or grouping of information about an individual that is maintained by an agency in a system of records. *See* 5 U.S.C. § 552a. The Privacy Act applies only to federal government "agencies." *See* 5 U.S.C. § 552a(b); OMB Guidelines, 40 Fed.Reg. 28948, 28950–51 (1975). Therefore, records within the possession or custody of plaintiff are not covered by the Privacy Act, even if a government agency houses copies of the same material.

Plaintiff has made serious allegations of defamation and Privacy Act violations against the defendants to this lawsuit. Although her statutorily protected interests must be appropriately protected, plaintiff cannot be allowed to keep information out of the public domain simply because a government agency has a matching record that would, from the government's perspective, be covered by the Privacy Act. Put another way, a litigant cannot be allowed to bring a lawsuit making a certain set of documents relevant to the court's discovery process and central to the public allegations made but then pick and choose which documents she would like released by pointing to a Privacy Act justification, even though that statute does not apply. Justice simply does not require such an order. *SEE* FED.R.CIV.P. 26(c). Therefore, good cause cannot be shown for a protective order restricting the use of discoverable documents within the possession or custody of plaintiff. Consequently, plaintiff's motions for protective order will be denied.[7]

## C. *Sanctions*

To briefly summarize the relevant circumstances, defendants have prevailed in part on one of their motions to compel. Plaintiff has lost on her motions for protective order. In this situation, the federal rules of civil procedure are clear: the court must apportion the reasonable expenses incurred in relation to these motions among the parties and persons in a just manner. FED.R.CIV.P. 37(a)(4)(C). As the court interprets the rules, however, it may refuse to apportion these expenses if it makes a finding of substantial justification as to any party's position or if "other circumstances make an award of expenses unjust." FED.R.CIV.P. 37(a)(4)(A) & (B). The court finds that neither side is deserving of sanctions because such an award would be "otherwise unjust." Therefore, the court will deny either party a recovery for sanctions.

The bulk of plaintiff's misconduct evidenced in this dispute is due purely to sloppiness.[8] First, plaintiff's counsel averages approximately four typographical, grammatical, or stylistic errors per page. These errors consist of frequent double-periods at the ends of sentences; frequent and obvious grammatical errors; the submission of two of the same pages repeatedly, beginning midway through a brief; and the termination of arguments in mid-sentence. The court will not waste its time attaching citations to each of these instances, as plaintiff's counsel have clearly not spent any of their time reading their own work submitted to the court. *But cf.* Plaintiff's Opposition to Defendant's Motion to Compel at 20 ("This response to the Washington Times [*sic* ] Motion to Compel is a collaborative effort of two of the plaintiff's attorneys who spent in excess of thirty hours in researching and writing this Opposition Brief."). Second, and more alarmingly, plaintiff's counsel inserts numerous baseless objections to defendants' discovery requests—including the novel "reporter's source confidentiality privilege" for non-re-

---

7. This holding does not, however, preclude plaintiff from moving for a protective order as to any specific document, as long as plaintiff can show good cause under FED.R.CIV.P. 26(c) independently of a faulty Privacy Act justification.

8. Although plaintiff is substantively incorrect as to her motion for protective order, this cannot be characterized as misconduct.

porters—only to completely omit any defense of these objections once the matter comes directly before the court in the form of motions and legal memoranda. This practice will not be tolerated from either party. Third, it appears that plaintiff's counsel has had some difficulty in meeting their own representations. Plaintiff's motion for protective order was submitted well beyond the time frame proposed by plaintiff's counsel, and, again contrary to representation, plaintiff's counsel never even bothered to submit a privilege log to the court or to defense counsel. In short, plaintiff's counsel has made a variety of mistakes that will not be tolerated in the future.

On the other hand, defendant News World Communications urges the court to accept a legal argument that has been specifically rejected by controlling case law from the Supreme Court and the Court of Appeals for the District of Columbia Circuit. As described above, defendant relies on *In re Halkin*, 598 F.2d 176 (D.C.Cir.1979), for the proposition that plaintiff has failed to make an adequate factual showing to support good cause for the entry of a protective order because plaintiff's allegations of harm are "conclusory." *See* Defendant News World Communications, Inc.'s Opp to Mot. for Protective Order at 4, 9. However, as defendant News World Communications fails to point out, *Halkin* was overruled on this exact point in *Seattle Times*, 467 U.S. at 31, 104 S.Ct. 2199, despite its willingness to cite favorably to *Seattle Times* for other propositions of law. *See EEOC v. National Children's Ctr., Inc.*, 98 F.3d 1406, 1411 (D.C.Cir.1996) (stating explicitly that the Supreme Court had overruled *Halkin* on the point cited by defendants).

Given these circumstances, the court will deny both parties' requests for sanctions. The court expects the conduct of the parties toward the court, and toward each other, to improve dramatically.

III. *Plaintiff's Motions for Extension of Time to Respond to Defendant News World Communications, Inc.'s First Request for Admissions*

The court finds good cause for an extension of time for plaintiff to respond to defendants' requests for admissions, given their numerosity and plaintiff's intervening pregnancy and delivery of her child. However, the court notes that plaintiff has not met her obligations under the rules because she has unilaterally granted herself an extension of time beyond that required under the rules without a court order. When a party is under an impending deadline, that deadline must be met unless an order of the court grants an enlargement of time. Submitting a motion for an enlargement of time at the last minute does not automatically allow plaintiff to pick a new deadline of her choosing. Plaintiff's counsel shall conform their conduct to the rules of federal procedure in the future or will suffer the consequences through sanctions.

IV. *Conclusion*

For the reasons stated above, the court HEREBY ORDERS that:

1. Defendant News World Communications, Inc.'s Motion [54] to Compel Discovery is GRANTED IN PART and DENIED IN PART. Specifically, it is FURTHER ORDERED that:

a. Defendants' requests to compel plaintiff to fully answer Interrogatory Numbers 6, 14, and 15 are GRANTED. Plaintiff shall provide full answers as provided in the federal rules of civil procedure and in accordance with the court's corresponding opinion within 15 days of the date of this order.

b. Defendants' requests to compel plaintiff to produce documents withheld as a result of attorney-client privilege, work-product doctrine, or reporter-source privilege are GRANTED, and plaintiff shall produce such documents within 10 days of the date of this order.

c. Defendants' request to compel plaintiff to produce all documents withheld pending the court's ruling on plaintiff's and Department of the Navy's motions for protective order is GRANTED. Such documents shall be produced within 10 days of the date of this order.

d. Defendants' requests in all other respects, including sanctions, are DENIED.

2. Plaintiff's Motion [56] for Protective Order is DENIED.

3. Plaintiff's Supplemental Motion [66] for Protective Order is DENIED.

4. Defendant New World Communications, Inc.'s Motion [65] for Leave to File Surreply to Plaintiff's Reply to Its Opposition to Motion for Protective Order is GRANTED.

5. Parties' Stipulation [N/D] for Entry of Protective Order on a Temporary Basis is DENIED as moot.

6. Defendants Donnelly and Center for Military Readiness's Motion [80] to Compel Compliance with Subpoena Duces Tecum is DENIED.

7. Department of the Navy's Motion [83] for Privacy Act Order and Protective Order is GRANTED to the extent provided in the terms of the protective order entered by separate order this date.

8. Plaintiff's Motion [69] for Extension of Time to Respond to Defendant News World Communications, Inc.'s First Request for Admissions is GRANTED *nunc pro tunc.*

9. Plaintiff's Supplemental Motion [72] for Extension of Time to Respond to Defendant News World Communications, Inc.'s First Request for Admissions is GRANTED *nunc pro tunc.*

SO ORDERED.